O’Neall, J.
It is said by the presiding judge in his report, that “it did not appear there had been any warrant of commitment : the magisti ates took the recognizance on the return of the warrant of apprehension, and when the prisoner was brought before them for commitment.” This statement of facts divests the first ground taken for nonsuit of all difficulty, even if the defendant could make the objection after the order of estreat. Under the Statute 31, Car. 2,, sect. 3, persons charged with treason or felony, plainly expressed in the war *541 rant of commitment, ave not entitled to the benefit of its provisions. If, therefore, the prisoner had been committed under a distinct eharge of felony, two justices who, by the provisions of our act making of force the stat. SI, of Car. 2, are authorized to grant writs of habeas corpus, would not have had the right to let him to bail.
But, it appears to me,, that the 3d. sec. of the 1 and 2 P. & M. c. 13, provides for the case in which the justices did act; and that they were at liberty on the return of the warrant of apprehension, in the exercise of a legal discretion, to bail the prisoner. It provides “that any person or persons arrested for manslaughter or suspicion of manslaughter or felony, being bailable by the law, shall not, after the said first day of April, be let to hail or mainprize by any justice of the peace, if it be not in open sessions, except it be by two justices of the peace, at the least whereof one to be of the quorum,” &c. The question is, under this clause of the statute, who are “bailable by the law ?” The first clause of the same statute declares, that “no justice or justices of the peace shall let to hail or main-prize, any such person or persons, which for any offence or offences by them or any of them committed, be declared not to be replevised or bailed, or be forbidden to be replevised or bailed by the statute of Westminster primer made in the Parliament holden in the 3d year of the reign of King Edward the First.” The offence charged in this recognizance is not one of those forbidden to be bailed- by the statute, of Westminster ; indeed it is not distinctly provided for at all, by any of its provisions. It may or may not be a felony; for to- pass counterfeit money without knowing it to be counterfeit, is no offence at all. To exclude the prisoner under the words of the statute of Westminster, asoné forbidden to be bailed,he must have been not only charged with felony, but on his examination there ought to have appeared a violent presumption of his guilt. Who was to judge whether this was the case. Unquestionably the justices before whom he was brought for commitment ? Again, is the prisoner entitled to be bailed under the directions of the statute declaring who shall be bailed ? The words under which he could claim are “of light suspicion.” Who must judge whether it be a light suspicion of felony of which he is charged ? The justices who examine the prisoner, is the answer. They ought not to bail if there are good grounds to believe the prisoner to be guilty of felony. But, if they err in this respect, it is an error in fact and law, and not in jurisdiction, and the recognizance would be good. 1 Chitt. Crim. Law, 96, 97.
If, however, there was any thing in this objection, it could not avail the defendants. It is res judicata against their privy *542 xu estaÉe! and must be so against them. When the scire facias was returned, the defendant was to shew cause, if any he had, “why judgement should not be coifirmed against him.” Having failed to make the objection then, he is concluded by the 01'der of the estreat, which is the confirmed judgement by recognizance, or more properly speaking, judgement upon the recognizance, State v. Morgan, 2 Bail. 602.
The objection to the order of estreat was not insisted on, and indeed it could not avail the defendants in any point of view. For it was sufficiently specific as against Moses Hendrix, in its words, and when connected with the sci. fa. admitted to have been issued and returned, it became sufficiently certain against both Harris and Hendrix ; for it is then a part of the proceedings, had on the very recognizance under consideration.
It is a sufficient answer to the ground for nonsuit then, to say, that, to give validity to th eft. fa., it was not necessary that any particular kind of seal should have been used. Whatever was the usual and customary seal of the Court was sufficient. The proof very clearly shews that the execution was sealed according to the usage of that Court; and until that usage was changed by the Court directing a different seal to be adopted, the clerk acted right in sealing as he did in this case.
The first ground for new trial was a mere question of fact, and with the verdict of the jury we are well satisfied. The second ground makes the question, whether, under any circumstances, a grantor can be a competent witness to prove his own deed ? The general rule is very clear, that where the original deed is produced, the grantor cannot prove the execution. Barry v. Wilbourne, 2 Bail. 91. But where the original deed cannot be produced, the rule does not apply. The best evidence cannot, in the nature of things, be produced, and secondary evidence of necessity must be resorted to. In a case like the present, if the person who executed and destroyed the deed cannot be allowed to prove its execution, it is not probable that any evidence could be obtained which would prove it. But in such a case there is no rule excluding him from being a witness, and from necessity he must be allowed to testify, (a.)
The motions for nonsuit and new trial are dismissed.
Johnson and Harper, Js. concurred.

 In connection with this point, the reporter will briefly state a decision in relation to this subject, in the case of The Executors of Hill v. Hill, at Columbia, May 1829.
On the trial of the case, a copy of a deed, (not recorded) the original of which was proved to have been lost or destroyed, was received in *543 evidence on the part of the plaintiffs, on proof by Mr. Clendinen that he once had this deed before him in drawing the will under which the plaintiffs claimed ; that he knew the hand writing of the parties, and believed it to be genuine; that observing it was skilfully drawn, and by an eminent conveyancer, (Mr. Hooker) he copied it into his form book, which was the copy offered in evidence; and that Wm. E. Hayne, of Charleston, was a subscribing witness. On appeal to this Court, it was held, that in the application of the rule which requires the best evidence of which the case is susceptible, Mr. Hayne the subscribing witness, being within the jurisdiction of the Court, should have been examined : That proof of the execution by the subscribing witness is entitled to more credit than that derived from-mere recollection and knowledge of hand writing. Delivery, too, is necessary to the perfection of every deed, and of this he might speak with more confidence, that the mode of proof adopted here exposes the party to imposition from forgery, which the examination of the witness would be calculated to prevent. And although the Court cannot know that the subscribing witness will recollect the execution and contents, yet according' to the reason and nature of things, the most reasonable conclusion is, that he who is a party to a transaction, and from that circumstance called on to treasure up in his memory all the minutim connected with it, would be more likely to retain them, than one who obtains his information from a secondary source, and is therefore to be preferred. That the evidence of Mr. Clendinen was therefore improperly admitted — and a new trial was ordered on that ground. R.